**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 20-4449**

─────────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

JAMES CALVIN BREEDEN,

              Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Senior District Judge. (7:19-cr-00117-BR-1)

─────────────

Submitted: November 22, 2021           Decided: December 14, 2021

─────────────

Before WILKINSON and RUSHING, Circuit Judges, and TRAXLER, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

G. Alan DuBois, Federal Public Defender, Jennifer C. Leisten, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. G. Norman Acker, III, Acting United States Attorney, Jennifer P. May-Parker, David A. Bragdon, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On February 26, 2020, a jury convicted James Calvin Breeden of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g), 924(a)(2); possession with intent to distribute 28 grams or more of cocaine base and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The district court subsequently sentenced Breeden to 120 months in prison, to be followed by a four-year term of supervised release. Breeden argues that the district court reversibly erred when it imposed the special conditions of supervised release without explaining why the conditions were appropriate and necessary in Breeden's case. Breeden also argues that the discretionary condition prohibiting him from incurring new credit charges or lines of credit without the probation office's approval impermissibly delegates the district court's authority in violation of Article III.[*] We reject Breeden's arguments and affirm.

Before imposing a sentence, a district court must consider the parties' arguments and "conduct an individualized assessment of the facts and arguments presented." *United States v. Blue*, 877 F.3d 513, 517-518 (4th Cir. 2017) (internal quotation marks omitted). The court then must "adequately explain the chosen sentence to allow for meaningful

---

[*] Breeden also challenged his § 922(g) conviction under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and argued that the district court reversibly erred by including discretionary conditions in the criminal judgment that it failed to announce at sentencing. Breeden nonetheless rightly concedes that his *Rehaif* argument is foreclosed by this court's decision in *United States v. Moody*, 2 F.4th 180, 197-98 (4th Cir. 2021), and subsequently withdrew his argument regarding the district court's failure to adequately pronounce the discretionary conditions at sentencing.

2

appellate review and to promote the perception of fair sentencing." *Id.* at 518 (internal quotation marks omitted).

This duty to explain applies equally to special conditions of supervised release. *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020). Notably, "this duty cannot be satisfied or circumvented through the adoption of a standing order purporting to impose special conditions of supervised release across broad categories of cases or defendants." *Id.* In contrast, "there may be instances when a special condition is so unobtrusive, or the reason for it so self-evident and unassailable," that the imposition of the conditions without explanation does not require vacatur and remand. *Id.* at 677; *see United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009) (noting that "a key purpose of the explanation requirement is to allow for meaningful appellate review" (internal quotation marks omitted)). A district court that fails to provide an explanation for the sentence imposed commits reversible procedural error. *United States v. Arbaugh*, 951 F.3d 167, 179 (4th Cir.), *cert. denied*, 141 S. Ct. 382 (2020).

As Breeden did not object to the district court's imposition of the supervised release conditions, we review the procedure by which the court imposed the conditions for plain error. *McMiller*, 954 F.3d at 675. To establish plain error, then, Breeden is required to establish that an error occurred, that was plain, and that affected his substantial rights. *United States v. White*, 405 F.3d 208, 215 (4th Cir. 2005). Even if Breeden meets the required showing, this court will not reverse "unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (brackets and internal quotation marks omitted).

3

In this case, the district court did not explain the special conditions it imposed and, thus, the court committed error that was plain. *See McMiller*, 954 F.3d at 675-76. Having reviewed the record, we nonetheless find that the reasons for the conditions imposed upon Breeden are intuitive and "self-evident." *Id.* at 677. *See, e.g., United States v. Camp*, 410 F.3d 1042, 1046 (8th Cir. 2005) (finding that district court did not abuse its discretion when it imposed credit line supervised release condition because the condition would aid the probation officer in monitoring the defendant's employment and was "reasonably related" to his "history of non-payment of his child support obligations").

Furthermore, unlike the unexplained conditions that this court has vacated, the additional conditions the district court imposed on Breeden are temporary, narrowly defined, and related to the circumstances of Breeden's offenses, and therefore do not permanently or unreasonably burden Breeden's liberty. *Cf. McMiller*, 954 F.3d at 677 (noting conditions, imposed on offender for the remainder of his life, that broadly prohibited offender who had accessed child pornography on computer from maintaining any social network account or using any electronic device capable of accessing the internet were overbroad); *Arbaugh*, 951 F.3d at 178 (vacating conditions, imposed without explanation, related to offender's use of computers even though his offense did not involve a computer); *United States v. Ross*, 912 F.3d 740, 746 (4th Cir. 2019) (noting that district court had imposed supervised release conditions for life, thereby "forever modify[ing]" the offender's life). We therefore find that any error did not affect Breeden's substantial rights.

We also reject Breeden's argument that the district court impermissibly delegated its Article III authority to Breeden's probation officer when it authorized the officer to

4

allow Breeden to incur new credit charges or open an additional line of credit with the officer's permission. "We review constitutional non-delegation challenges to conditions of supervised release de novo." *United States v. Comer*, 5 F.4th 535, 547 (4th Cir. 2021) (internal quotation marks omitted). "Generally, courts may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *Id.* (internal quotation marks omitted). "Of course, the type of duty that the court may [so] delegate is limited by Article III." *United States v. Van Donk*, 961 F.3d 314, 327 (4th Cir. 2020) (internal quotation marks omitted). "Specifically, courts can't delegate core judicial functions such as the authority to decide the amount of a fine or restitution payment, or whether a defendant must attend a treatment program." *Comer*, 5 F.4th at 547 (internal quotation marks omitted).

In *Van Donk*, this court rejected a nondelegation challenge to a term of supervised release that required a defendant "to comply with the rules of his sex-offender treatment program." 961 F.3d at 316, 327-28. In that case, the court "contrasted permissible delegations, in which district courts permitted probation officers or therapists to fashion the means or details of court-ordered therapy, with impermissible delegations, where probation officers or therapists were empowered to determine whether a defendant needed to attend therapy at all, or were permitted to impose conditions on the defendant unrelated to their therapy without judicial review." *Comer*, 5 F.4th at 547 (construing *Van Donk*, 961 F.3d at 327-28). The court also found it relevant that the district court retained "ultimate responsibility over the core judicial function of deciding whether [the defendant] ha[d] violated his conditions of supervised release." *Van Donk*, 961 F.3d at 327. "That is,

5

the defendant's supervised release was not 'automatically revoked' when he was expelled from his treatment program." *Comer*, 5 F.4th at 547 (brackets omitted). "Rather, he was given a hearing on the issue, which afforded him due process without having the district court micromanage his treatment." *Id.* (brackets and internal quotation marks omitted). "*Van Donk* thus instructs that as long as the court orders the broad principle guiding the condition of release and retains the ultimate authority over revoking release, the court may allow the probation officer to fill in many of the details necessary for applying the condition." *Id.*

More recently, the court determined in *Comer* that a "district court did not impermissibly delegate its Article III authority to [a] probation officer when it authorized her to allow Comer to maintain social networking accounts with [the probation officer's] permission." *Id.* As the court explained, the district court in that case actually "established the principle that Comer could not maintain social networking accounts without permission and, as in *Van Donk*, maintains the core judicial function of determining whether Comer violates her conditions of release." *Id.* The court also found it important that the probation officer could not punish Comer but "merely supports the judicial function of imposing supervised release by determining if she can maintain certain social networking accounts, a decision that itself is subject to review by the district court." *Id.* at 547-58.

Similar to the social networking accounts condition at issue in *Comer*, the district court's "line of credit" condition here provided that Breeden could not incur new credit charges or open additional lines of credit without approval of the probation office. *See id.* at 540 (indicating that challenged special condition of supervised release "stat[ed] that

6

Comer was 'not to have any social networking accounts without the approval of the U.S. Probation Officer'" (brackets omitted)). The district court here thus "established the principle" that Breeden could not incur new credit charges or open additional lines of credit without approval while still "maintain[ing] the core judicial function of determining whether [Breeden] violates [his] conditions of release" if he does so. *Id.* at 547. Moreover, while the probation officer may deny Breeden permission to incur new credit charges, for example, only the district court may punish Breeden if he incurs such charges without the probation officer's permission. *Id.* We therefore reject Breeden's argument that allowing the probation officer to deny Breeden permission to incur new credit charges or open new lines of credit amounted to an impermissible delegation of the district court's Article III authority.

Based on the foregoing, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*